Citation Nr: 1602926 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 09-05 042 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for burns to the hands.

2. Entitlement to service connection for an acquired psychiatric disorder, to include generalized anxiety disorder and depression.

3. Entitlement to service connection for a sleep disorder.

4. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder, and to include whether these claims to service connection should be reconsidered.

5. Entitlement to service connection for a back disorder.

6. Entitlement to service connection for a right knee disorder.

7. Entitlement to service connection for a right shoulder disorder.

8. Entitlement to service connection for a left shoulder disorder.

9. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a left knee disorder, and if so, whether service connection is warranted. 

10. Entitlement to nonservice-connected pension benefits. 


REPRESENTATION

Appellant represented by: John F. Cameron, Attorney


ATTORNEY FOR THE BOARD

A. Hodzic, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active military service from April 1976 to April 1979 in the United States Army, and appears to have had an additional four months and two days of prior active military service, as well as service in the Alabama National Guard. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision of the Department of Veteran's Affairs (VA) Regional Office (RO) in Montgomery, Alabama, which denied entitlement to service connection for burns to the hands, and from a November 2013 rating decision, which denied entitlement to service connection for an acquired psychiatric disorder and a sleep disorder. Moreover, the November 2013 rating decision reopened the claims of entitlement to service connection for a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder, but denied these claims on the merits. Additionally, an April 2011 rating decision denied the claim to reopen entitlement to service connection for a left knee disorder and a separate April 2011 decision denied entitlement to nonservice-connected pension. The Veteran appealed the denials in these decisions and the matters are now before the Board.

This case was previously before the Board on several occasions, and most recently in April 2012, the Board decided several of the issues and remanded the claim of entitlement to service connection for burns to the hands for additional evidentiary and procedural development. As discussed in more detail below, the Board finds that there has been substantial compliance with its remand orders and that it may therefore proceed with a determination of this issue on appeal. See Stegall v. West, 11 Vet. App. 268 (1998).

The issues of entitlement to service connection for an acquired psychiatric disorder, a sleep disorder, a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder, as well as the claim to reopen entitlement to service connection for a left knee disorder and entitlement to nonservice-connected pension benefits, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's right-hand burn scar was not incurred in service, and it is not otherwise caused by or related to his military service.

2. In an April 2012 decision, the Board denied the Veteran's claim of entitlement to service connection for a back disorder and claims to reopen claims of entitlement to a right knee disorder, a right shoulder disorder, and a left shoulder disorder. 

3. Since the April 2012 Board decision, relevant official service department records were associated with the claims file. 


CONCLUSIONS OF LAW

1. The criteria for service connection for burns to the hands have not been met. 38 U.S.C.A. §§ 1101, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2015).

2. The April 2012 Board decision that denied entitlement to service connection for a back disorder and claims to reopen entitlement to a right knee disorder, a right shoulder disorder, and a left shoulder disorder is final. 38 U.S.C.A. § 7104(a) (West 2014); 38 C.F.R. §§ 20.1100(a), 20.1104 (2015).

3. The issues of entitlement to service connection for a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder are reconsidered. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156(a), (c) (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection for Burns to the Hands

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 

In determining whether service connection is warranted for a disorder, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Initially, the Board notes that the claims file includes several VA and private treatment records that document the presence of a current burn scar to the right hand. For example, in March 2015, a VA examiner diagnosed him with a burn scar on his right hand that was superficial and non-linear, and its dimensions were seven centimeters (cm) by five cm. Thus, the presence of a current burn to the hand, i.e., a burn scar on his right hand, is not in question. 

Regarding the second element of service connection, the Board notes that the Veteran's service treatment and personnel records do not document the presence of a burn scar, nor do these records show that he complained of or was treated for a burn scar on either hand in service. Specifically, service medical examinations from February 1976, November 1978, and February 1979 do not show any such symptoms. While a July 1975 enlistment report of medical examination shows a two-inch scar to his left hand as an identifying mark, there is no indication in the service treatment records or any subsequent medical record that this two-inch scar to his left hand is related to the current right-hand burn scar. 

The Veteran was afforded a VA examination for his burn scar in May 2012, at which time a VA examiner diagnosed him with a minimal proximal interphangeal little finger contracture on his right hand. The Veteran reported that he sustained burns on both of his hands while repelling at Fort Campbell, Kentucky, where he was stationed during service. Following an in-person examination, the examiner opined that the Veteran experiences a minimal right little finger disorder, and that his present bilateral hand condition was not caused by, resulted from, or was permanently aggravated by his military service. 

He underwent another VA examination in March 2015, during which the examiner reviewed his records, performed an in-person examination, and took down the Veteran's history and self-reported symptoms. The Veteran was diagnosed with a burn scar to the right hand that onset in 1989. He reported that the burn on his right hand was sustained in a workplace injury in 1989 when his hand was caught between two rollers of a large machine. He did not report and specifically denied that he had any burn injuries to his hand during military service. He complained of his right little finger pain and loss of motion, which he attributed to his reported injury from air assault school when he was stationed at Fort Campbell. He told the examiner that he sought medical care for this injury in service. 

The examiner noted that his service treatment records showed that he was treated for a left hand injury in May 1977, which was assessed as a hyperflexion injury and diagnosed as a left wrist sprain. He had been on profile as well as medications for this injury. The examiner noted that this was a left hand injury, and not a right hand injury. Additionally, the examiner noted that his separation physical in February 1979 showed no burns on the hands and no chronic or recurrent hand disability. 

The examiner opined that the right hand burn injury was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. After noting that only the Veteran's right hand has the burn scar, the examiner explained that the Veteran contended that this injury to the hand occurred in a machine accident in 1989, well after military service. Additionally, the type of injury which the Veteran reported to his right hand during the air assault school would not have been expected to cause the size and type of burn present on the Veteran's right hand. Furthermore, the current right hand burn is very large and prominent, yet there was no mention of this burn injury or evidence of a burn on his February 1979 separation physical. 

An April 2013 VA primary care note showed that the presence of an old burn scar on the dorsum of the right hand, but did not discuss the etiology of the scar or when it was incurred. 

Regarding the lay evidence of record, the Veteran has stated on several occasions that he burned his hands in service. For example, in a March 2006 statement in support of his claim, he stated that he burned his hands at Fort Campbell in 1977. 

In light of the aforementioned evidence, the Board finds that the Veteran's right-hand burn scar was not incurred in service, and it is not otherwise caused by or related to his military service. The May 2012 and March 2015 VA examiners' opinions that his right hand burn scar and a minimal proximal interphangeal little finger contracture on his right hand are not related to any in-service incurrence are entitled to significant probative weight because they explained the reasons for their conclusions based on an accurate characterization of the evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Furthermore, the Board finds these examiners' findings and opinions to be probative evidence because of their expertise, training, education, proper support and rationale, and thorough review of the Veteran's self-reported history and records. 

While the Board acknowledges the Veteran's statements that his burns to the hands disorder were caused in 1977 at Fort Campbell, it also notes that he has indicated that it was caused by a 1989 injury related to his previous work. Furthermore, his service treatment records do not document any complaints of or treatment for a burn scar to his hand, although they do note treatment for other physical injuries, including a left hand wrist injury. Thus, the Board determines that its conclusion is more in keeping with the record as a whole because of the VA examiners' opinions, the Veteran's admission that the injury occurred more than ten years after separation from service in 1979, and the lack of treatment for this injury in service. Therefore, as the preponderance of the evidence is against service connection for burns to the hands, the benefit of the doubt doctrine does not apply, and the Veteran's claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 


New and Material Evidence and Reconsideration

An April 2012 Board decision denied service connection for a back disorder and claims to reopen entitlements to service connection for a right knee disorder, a right shoulder disorder, and a left shoulder disorder. The prior RO denials were subsumed by that final Board decision. 38 C.F.R. §§ 20.1100(a), 20.1104 (2015). Moreover, the Board's April 2012 decision was affirmed by a memorandum decision of the United States Court of Appeals for Veterans Claims (Court) in April 2014. See Herbert v. Shinseki, No. 12-1716, 2014 WL 1509267 (Apr. 18, 2014).

Generally, a Board decision is final unless the Chairman of the Board orders reconsideration. See 38 U.S.C.A. §§ 7103(a), 7104(a) (West 2014); 38 C.F.R. § 20.1100(a). An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, VA shall reopen the claim and review the former disposition of the claim. See Manio v. Derwinski, 1 Vet. App 145 (1991). Furthermore, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding the requirement that new and material evidence must first be received. 38 C.F.R. § 3.156(c).

At the time of the April 2012 Board decision, the Veteran's claims file consisted of approximately four pages of service personnel and medical records, which were associated with his claims file in June 1979. However, additional relevant service department records were associated with his claims file in October 2012. These records include approximately 90 pages of service personnel and medical records from his active duty in the Army and Alabama National Guard, and they show that he complained of and was treated for musculoskeletal and psychiatric symptoms in service. They are relevant because the Veteran alleges that his current physical disorders, including a back disorder, a right knee disorder, a left shoulder disorder, and a right shoulder disorder stem from several injuries in service. Pursuant to 38 C.F.R. § 3.156(c), these additional service records are relevant, and require reconsideration of the claims for service connection. Accordingly, the Board will consider the Veteran's the claims of service connection for a back disorder, a right knee disorder, a left shoulder disorder, and a right shoulder disorder on the merits without making a threshold determination regarding whether new and material evidence has been received. See 38 C.F.R. § 3.156(a). See also Vigil v. Peake, 22 Vet. App. 63 (2008).

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. Notice letters were sent to the Veteran in September 2013 and December 2014, prior to the final adjudications of the claim for service connection for burns to the hands. Notices sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letters complied with the requirements of 38 U.S.C.A. § 5103(a) (West 2014) and 38 C.F.R. § 3.159(b). 
 
VA also has a duty to assist a veteran in the development of a claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). The Board finds that VA has satisfied its duty to assist by acquiring service medical and personnel records, and records of VA and private treatment.

The duty to assist was further satisfied by VA examinations in May 2012 and March 2015, during which examiners were provided the claims file for review, conducted physical examinations of the Veteran, took down the Veteran's history, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on the Veteran's history and examinations that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining VA examinations has been met. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). 

The Board notes that the Veteran's claims to reopen entitlement to service connection for a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder, and to include whether these claims to service connection should be reconsidered, have been granted, and thus, no additional duties of notice or assistance are required.

Finally, the Board remanded the claim of entitlement to service connection for burns to the hands April 2012 for additional development, including affording the Veteran a VA examination and issuing a supplemental statement of the case (SSOC) if any benefit was denied by the RO. Accordingly, the Veteran underwent VA examinations in May 2012 and March 2015, and VA issued an SSOC most recently in May 2015 for the burns to the hands claim. Therefore, the Board finds that there has been substantial compliance with its April 2012 remand directives regarding this claim, and the Board has properly proceeded with the foregoing decision. See Stegall, 11 Vet. App. at 271 (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).

Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claim for entitlement to service connection for burns to the hands and no further notice or assistance is required.



ORDER

Entitlement to service connection for burns to the hands is denied.

Claims of entitlement to service connection for a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder are reconsidered; the claims are granted to this extent only. 


REMAND

The Board must remand the issues of entitlement to service connection for an acquired psychiatric disorder, a sleep disorder, a back disorder, a right knee disorder, a right shoulder disorder, and a left shoulder disorder, as well as the claim to reopen entitlement to service connection for a left knee disorder and entitlement to nonservice-connected pension benefits, for additional procedural and evidentiary development. 

Regarding the claim of entitlement to service connection for an acquired psychiatric disorder, to include generalized anxiety disorder and depression, the Board notes that the Veteran underwent a VA examination in November 2013, during which the examiner diagnosed him with a generalized anxiety disorder. Furthermore, the examiner opined that his anxiety symptoms are less likely as not (less than 50/50 probability) caused by or a result of military related stressors; however, the examiner did not provide further explanation for this conclusion. The Board finds the November 2013 VA examiner's opinion regarding the causal relationship between the Veteran's current acquired psychiatric disorder and his military service to be inadequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (noting that when VA undertakes to provide an examination or obtain an opinion, it must ensure that the examination or opinion is adequate). Specifically, the VA examiner did not provide a rationale for his conclusion that the Veteran's current anxiety symptoms were less likely than not caused by or a result of his military service. Additionally, the examiner did not discuss the Veteran's in-service complaints of psychiatric symptoms, including his complaints of depression or excessive worry in his February 1979 separation report of medical history. 

Furthermore, the claims file includes a November 2015 private psychological evaluation in which the Veteran was diagnosed with significant depression that was caused by his mood disorder due to orthopedic problems and worsened by his chronic pain. Given that the Veteran currently has varying diagnoses for his psychiatric symptoms, and given the fact that he complained of depression and excessive worry in service and depression was noted on his separation examination, he should be afforded another VA examination for his psychiatric symptoms to diagnose any current acquired psychiatric disorder and to determine whether such disorder is causally related to his military service. 

In regards to the claim of entitlement to service connection for a sleep disorder, the Board notes that VA must provide a medical examination and medical opinion in disability compensation claims when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent evidence on file for VA to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79, 79 (2006). 

The Veteran's VA and private treatment records show treatment for current sleep disorder symptoms. For example, an August 2014 private dermatology progress note showed that the Veteran had a history of sleep apnea, which was treated with a continuous positive airway pressure (CPAP) machine. Similarly, a June 2015 VA pain nurse's note showed that his knee pain affects his sleep. Additional private and VA treatment notes, such a March 2012 VA primary care initial evaluation note, show that he has utilized the CPAP machine and medication for his sleep disorder symptoms. Furthermore, the Veteran's service treatment records, including the February 1979 separation report of medical history, show that he complained of frequent trouble sleeping and an evaluator noted that he had insomnia. However, his claims file does not include sufficient competent evidence regarding the causal connection between any current sleep disorder and his military service. Thus, he should be afforded a VA examination for his sleep disorder. Id. 

Similarly, the Veteran should be afforded VA examinations for his right knee, back, and left and right shoulder claims. The claims file includes numerous VA and private treatment records that show the presence of current disorders for his back, right knee, and left and right shoulders. For example, a June 2013 private progress note showed chronic lower back pain ,a January 2014 showed that his back disorder causes radicular pain in his lower extremities, and May 2010 private progress note showed an impression of lumbar degenerative disc disease (DDD) and lumbar radiculopathy. Likewise, he has complained of bilateral knee pain in many private and VA treatment records, including an April 2010 private progress note, and a December 2012 private treatment note showed that he received Synvisc injections in both knees to alleviate his osteoarthritis symptoms. Similarly, various VA and private treatment notes show complaints of and treatment for left and right shoulder pain, including a May 2010 private magnetic resonance imaging (MRI) scan of the left shoulder showing mild degenerative changes and an October 2009 VA x-ray of the right shoulder that showed spurring along the greater tuberosity that suggested an old trauma to the area. Thus, the claims file includes competent evidence of persistent or recurrent symptoms of a disability for these claimed disorders. Id.

Additionally, the Veteran has stated on numerous occasions during the present appeal that these disorders are due to injuries that he sustained while in service. Specifically, he indicated in a March 2010 statement in support of his claims that his left shoulder, back, and bilateral knees were injured while he was stationed at Fort Campbell from 1977 to 1979. Most recently in November 2015, he made very similar contentions in another statement in support of his claims, and he also indicated that he injured his right knee in service as well. The Veteran's service treatment records include several noted complaints of and treatment for musculoskeletal symptoms, including his February 1979 separation report of medical history in which he indicated symptoms of swollen or painful joints, cramps in his legs, and broken bones. Thus, the claims file includes evidence indicating that these current disorders may be associated with his service; however, there is insufficient competent evidence on file for VA to make a decision on these claims because there is no medical opinion as to the causal connection between the current disorders and the Veteran's service. Id. Accordingly, the Veteran should be afforded VA examinations for his back, right knee, and left and right shoulder claims. 

Finally, the Board must remand the claim to reopen entitlement to service connection for a left knee disorder and entitlement to nonservice-connected pension benefits to cure a due process deficiency. When a claimant has filed a notice of disagreement (NOD) and there is no statement of the case (SOC) on file for that issue, the Board must remand, not refer, the issue to the RO for issuance of an SOC. Manlincon v. West, 12 Vet. App. 238 (1999); Godfrey v. Brown, 7 Vet. App. 398 (1995); Archbold v. Brown, 9 Vet. App. 124 (1996). 

In an April 2011 rating decision, the RO denied the claim to reopen entitlement to service connection for a left knee disorder. In a subsequent April 2011 letter, the RO also denied the Veteran's claim of entitlement to nonservice-connected pension benefits. Although VA sent notices of these decisions in April 2011, they were sent to the wrong address. The Veteran did not receive notice of these adverse decisions until July 2013. In August 2013, he filed an NOD regarding both claims. A review of the claims file indicates that VA has not issued an SOC regarding the left knee and pension benefits claims. As the claims file does not contain an SOC addressing these issues, the Board must remand these matters to rectify the due process deficiency. 

Accordingly, the case is REMANDED for the following action:

1. Request and schedule the Veteran for VA examinations with appropriate examiners to assess any current symptoms and diagnoses for an acquired psychiatric disorder, a sleep disorder, a back disorder, a right knee disorder, a left shoulder disorder, and a right shoulder disorder, and to obtain opinions as to the causal relationship between any such symptoms and diagnoses with the Veteran's military service. The entire claims file, including this Remand, should be made available to the examiners, and the examiners should indicate review of such records, including his service treatment records that document complaints of or treatment for symptoms to these areas of his body.

The examiners should specifically determine and diagnose the Veteran's current acquired psychiatric disorder, sleep disorder, back disorder, right knee disorder, and left and right shoulder disorders and state whether these disorders were at least as likely as not (i.e., a 50 percent degree of probability or greater) caused by or aggravated by his military service. The examiners should provide a detailed rationales for all opinions and conclusions expressed. 

Any indicated diagnostic tests and studies should be accomplished and all pertinent symptomatology and findings should be reported in detail. Specifically, the examination reports should contain a detailed account of all manifestations of any acquired psychiatric disorder, sleep disorder, back disorder, right knee disorder, and left and right shoulder disorder symptoms, if any are present, and the examiners should provide detailed rationales for all opinions and conclusions expressed. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but rather that the weight of evidence both for and against a conclusion is so evenly divided that it is as sound to find in favor of causation as it is to find against it. The term "aggravated by" means a lasting increase in severity of the underlying disability that is not due to the natural progress of the disease.

2. After completing all indicated developments above, readjudicate the claims of entitlement to service connection for an acquired psychiatric disorder, a sleep disorder, a back disorder, a right knee disorder, a left shoulder disorder, and a right shoulder disorder, and readjudicate the claim to reopen entitlement to service connection for a left knee disorder and a claim of entitlement to nonservice-connected pension benefits in light of all of the evidence of record. If any benefit sought on appeal remains denied, an SOC or SSOC should be furnished to the Veteran and his representative, and they should be afforded a reasonable opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs